**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

TOYOTA MOTOR CREDIT CORPORATION

     Plaintiff

v.

STEPHEN CADILLAC GMC, INC.; STEPHEN
J BARBERINO, JR., INDIVIDUALLY; MARY ANN
HALL, AS TRUSTEE, AND STEPHEN
J BARBERINO, JR, AS TRUSTEE

     Defendants

Civil Action No. 3:26-cv-00511-SFR

April 9, 2026

**TOYOTA MOTOR CREDIT CORPORATION'S**
**MOTION FOR INJUNCTIVE RELIEF, REPLEVIN AND PREJUDGMENT REMEDY**

Plaintiff Toyota Motor Credit Corporation ("TMCC"), by and through its undersigned counsel, hereby moves for an emergency hearing for Injunctive Relief, Replevin and Prejudgment Remedy (the "Motion") against the Defendants in this matter pursuant to Fed. R. Civ P. 64 and 65 along with Conn. Gen. St. §52-515 and Conn. Gen St. §52-278a et seq. to enter an Order (i) temporarily and preliminarily enjoining defendants Stephen Cadillac GMC, Inc. ("SCG"); Stephen J Barberino, Jr., Individually ("Mr. Barberino"); Mary Ann Hall, in her capacity as trustee of the Stephen J. Barberino Jr. Accumulation Trust, ("MAH, Accumulation Trustee"); and Stephen J. Barberino, Jr., in his capacity as trustee of the Stephen J. Barberino Jr. Spray Trust ("SJB, Spray Trustee" and with Mr. Barberino and MAH, Accumulation Trustee, the "Guarantors") and other persons and firms having knowledge of the injunction from continuing to use the Inventory Collateral ( as defined in   the Memorandum of Law submitted with this Motion); (ii) ordering SCG to disclose to TMCC the precise location of the Collateral in order for TMCC or its agents to recover the Inventory Collateral; (iii) temporarily and preliminarily enjoining SCG from restricting the access of TMCC or its agents to the Inventory Collateral; (iv) ordering SCG to surrender the

1

Inventory Collateral; (iv) granting possession of the Inventory Collateral, including any and all additions, attachments, and accessories thereto, to the officer or agents of TMCC; (v) directing the marshal in any county where the Inventory Collateral located to take possession of the Inventory Collateral and to deliver it to the officer or agents of TMCC; (vi) awarding TMCC money damages for losses sustained as a result of SCG's unlawful detention of the Inventory Collateral; (vii) ordering a prejudgment attachment of any real or personal property of the Guarantors sufficient to protect the interests of TMCC and (viii) for such other relief as this Court deems just and proper.

In support of this Motion, the Plaintiff hereby submits its Memorandum of Law, the supporting affidavit of Deanna Kostelnik of TMCC and a recognizance bond in an amount of $11,000,000 (double the estimated value of the Inventory Collateral).

DATED:  April 9, 2026                    NEUBERT PEPE & MONTEITH, PC.

*/S/ Christopher J Picard*
Christopher J Picard (ct22835)
Douglas S. Skalka (ct00616)
James C. Graham (ct06064)
195 Church St, 13th Floor
New Haven, CT 06510
cpicard@npmlaw.com
dskalka@npmlaw.com
jgraham@npmlaw.com
(203)781-2845

*Counsel for Toyota Motor Credit Corporation*

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

TOYOTA MOTOR CREDIT CORPORATION

    Plaintiff

v.

STEPHEN CADILLAC GMC, INC.; STEPHEN
J BARBERINO, JR., INDIVIDUALLY; MARY ANN
HALL, AS TRUSTEE, AND STEPHEN
J BARBERINO, JR, AS TRUSTEE

    Defendants

Civil Action No. 3:26-cv-00511-SFR

April 9, 2026

**MEMORANDUM IN SUPPORT OF TOYOTA MOTOR CREDIT CORPORATION'S
MOTION FOR INJUNCTIVE RELIEF, REPLEVIN AND PREJUDGMENT REMEDY**

Plaintiff, Toyota Motor Credit Corporation ("TMCC"), by and through its undersigned counsel, hereby submits its Memorandum of Law in Support of its Motion for Injunctive Relief, Replevin and Prejudgment Remedy (the "Motion").

**STATEMENT OF FACTS**

TMCC engages in the business of inventory financing as a lender to Toyota dealers across the country, including Stephen Cadillac GMC, Inc. ("SCG"). The Inventory Loan and Security Agreement ("ILSA") is the means by which TMCC provided inventory financing to SCG. The ILSA allowed SCG to purchase new motor vehicles, among other things, from the motor vehicle manufacturer, Toyota Motor Sales, U.S.A, Inc. ("OEM").

On or about February 10, 2014, TMCC and SCG entered into the ILSA, as amended and restated on or about August 24, 2021, through which TMCC extended credit to SCG for the purchase of new and used motor vehicles. In conjunction with the ILSA, on or about February 10, 2014, SCG and TMCC entered into a Capital Loan and Security Agreement ("CLSA"), as amended

3

and restated on or about August 24, 2021, in which TMCC agreed to establish capital loans to SCG, including a revolving capital loan to SCG pursuant to the Provisions of Capital Loans dated as of February 1, 2026.

The ILSA and CLSA together are the "SCG Financing Agreements". The collateral securing repayment of all credit extended under the SCG Financing Agreements ("Collateral") is set forth in the definitions in the SCG Financing Agreements, and in Sections 5.6 Collateral and 5.7 First Priority Security Interest; Enforceability of Collateral thereof, and is defined as:

> all of each Borrower's right, title, and interest in and to all personal property and assets of each Borrower, including the following in each case, whether such Borrower now has or hereafter acquires or creates ownership or other rights therein: (i) inventory, including new and used Motor Vehicles, and including all parts, accessories, furnishings and supplies, goods and inventory property of like kind or type including replacements, substitutions, additions, and returns, and further including all consigned goods; (ii) equipment, including, all new and used furniture, equipment, appliances, fixtures, machinery, tools, and supplies and goods of like kind or type, including all additions, substitutions, replacements, attachments, and accessories; (iii) investment property; (iv) accounts; (v) deposit accounts, including the Operating Account, and other accounts with banks or other financial institutions, and all monies on deposit therein; (vi) cash, money, or other personal property assets that now or hereafter come into the possession, custody, or control of TMCC, including payments and credits that TMCC may owe to such Borrower and all funds of such Borrower that TMCC may have or retain in its possession, whether in the form of cash collateral, reserve, contingency, or escrow accounts, or otherwise; (vii) chattel paper (including electronic chattel paper), instruments, documents, security agreements, contract rights, policies, certificates of insurance, advance warranty payments, including any guaranties thereof, and choses or things in action; (viii) such Borrower's general intangibles (including tax refunds, license rights, franchise rights, copyrights, patent rights, trademarks, service marks, trade names and goodwill, files, computer disks and tapes, computer programs and software, catalogs, purchase orders and customer lists, all rights to receive payment, credits and other compensation including all holdbacks, incentive payments, rebates, stock rebates, refunds, allowances and additional "factory credits" from any manufacturer, distributor or supplier of inventory or equipment, or from any of their subsidiaries or affiliates), supporting obligations, URLs, and domain names; (ix) Negotiable Collateral; (x) all proceeds of the foregoing or any portion thereof, including proceeds of proceeds, goods received in trade, claims and tort recoveries, insurance proceeds, refunds of insurance premiums, proceeds derived from such Borrower's sale or assignment of chattel paper, and all cash and other funds held in all deposit accounts in which proceeds may be deposited; and (xi) Borrowers' Books. "Collateral" includes, but is not limited to, the foregoing items on order or in transit. The types of Collateral described above are intended to change, expand, and contract as the definitions and descriptions of

such types of Collateral that are set forth in the Uniform Commercial Code change, expand, or contract.

On May 9, 2003[1], TMCC perfected its security interest in the Collateral by filing a UCC Financing Statement with the Connecticut Secretary of State as amended on December 16, 2019, and again on December 14, 2022.

In connection with the SCG Financing Agreements (amended and restated on August 21, 2021), on February 7, 2014, Stephen J. Barberino, Jr., individually, and Mary Ann Hall, in her capacity as trustee of the Stephen J. Barberino Jr. Accumulation Trust, ("MAH, Accumulation Trustee") executed a Continuing Guaranty, and on February 15, 2018, Stephen J. Barberino, Jr., in his capacity as trustee of the Stephen J. Barberino Jr. Spray Trust  ("SJB, Spray Trustee" and with Mr. Barberino and MAH Accumulation Trustee, the "Guarantors") executed a Continuing Guaranty (collectively, the "Guaranty Agreements").

A significant risk in motor vehicle inventory financing is that the dealer borrower will sell the collateral at retail or to a wholesaler and then wrongfully retain the proceeds that should have been remitted to the inventory floorplan lender without informing the lender of the sale. A purchaser of inventory in the ordinary course of business customarily takes free of the inventory floorplan lender's lien. Because inventory is intended to be sold, the transaction to the consumer has no indicia of impropriety. The inventory floorplan lender's main protection is therefore the trust and integrity of the dealer borrower.

There are covenants in the ILSA that require SCG to provide updated and accurate information concerning the inventory and to timely pay TMCC upon the delivery of a motor vehicle to a purchaser or lessee thereof, another motor vehicle dealer or a wholesaler or the receipt

---

[1] TMCC and the Defendants were parties to prior financing agreements.  The 2021 SCG Financing Agreements are the operative documents for this matter.

by SCG of payment for a motor vehicle financed by TMCC. To the extent that the dealer borrower sells a vehicle in its inventory without paying the principal owed to the inventory floorplan lender, such an occurrence is commonly known as a "Sale Out of Trust" or "SOT."

On March 27, 2026, a floorplan audit was conducted by TMCC at the SCG dealership located at 1069 Farmington Ave, Bristol, CT 06010. During the audit, approximately 46 motor vehicles were unaccounted for by the auditors. The value of the missing motor vehicles exceeded $1,400,000.

On March 30, 2026, TMCC sent Defendants a Notice of Default and Demand For Payment ("Demand Letter") demanding payment of all obligations under the SCG Financing Agreements and further demanding the immediate possession of the Collateral, as defined in the SCG Financing Agreements, in Defendants' possession.

Upon information and belief, between March 27 and March 31, 2026, SCG caused additional motor vehicles to be removed from the dealership located at 1069 Farmington Ave, Bristol, CT 06010 which were inventory subject to the SCG Financing Agreements. Several more motor vehicles that are financed by TMCC or have TMCC's lien on title that have not been located since March 31, 2026. The value of the 58 motor vehicles currently missing is $1,654,026.71.

On March 30, 2026, TMCC made demand for payment in full under the SCG Financing Agreements. Another Notice of Default and Demand for Payment was issued to the Defendants on April 1, 2026, demanding payment of all obligations under the SCG Financing Agreements and further demanding the immediate possession of the Collateral, as defined in the SCG Financing Agreements, in Defendants' possession.

In this instance, a minimum of two events of default have occurred. First, SCG failed to provide updated and accurate information concerning the Collateral; and second, SCG sold out of

trust motor vehicles financed by TMCC or which have TMCC's lien on title (the "Sold Out of Trust Vehicles"). Pursuant to the terms of the SCG Financing Agreements, upon an event of default any and all obligations become immediately due and payable without notice of demand, which is expressly waived by SCG in the SCG Financing Agreements and Guarantors in the Guaranty Agreements.

The obligations owed by SCG to TMCC under the SCG Financing Agreements (not including interest, fees and costs) as of April 2, 2026 are:

| | |
|---|---|
| (a) Sold Out of Trust Vehicles: | $1,530,409.86 |
| (b) TRAC (rental cars): | $ 981,284.11 |
| (c) Wholesale Loan | $3,336,254.73 |
| (d) Revolving Line of Credit Loan | $ 300,000.00 |
| **Total:** | $6,147,948.70 |

Moreover, pursuant to the Guaranty Agreements entered into by Defendants, Mr. Barberino; SJB, Spray Trustee; and MAH, Accumulation Trustee, each of the Guarantors are responsible for the outstanding indebtedness of SCG upon an event of default on any debt or obligation due and owing to TMCC. Due to the occurrence of an event of default under the SCG Financing Agreements, the Guarantors, pursuant to the Guaranty Agreements, became immediately responsible for the outstanding principal balance, plus accrued interest, attorneys' fees and costs due and owing from SCG to TMCC.

As of the date of this writing, SCG has failed to account for all vehicles in the Collateral and failed to make payment for the Sold Out of Trust Vehicles .

## LAW AND ARGUMENT

**A. TMCC's Superior Right to the Collateral Warrants Entry of an Order of Replevin as to the Inventory Collateral.[2]**

---

[2] The property referred to in Section 5.6(i) of the SCG Financing Agreements, together with such property related thereto (including without limitation documents of title, chattel paper and keys) shall for purposes of this Motion be defined as "Inventory Collateral".

This court is empowered to order replevin pursuant to Federal Rule of Civil Procedure 642 and Connecticut General Statutes §§ 52-515 *et seq.,* which provides in relevant part:

> The action of replevin may be maintained to recover any goods or chattels in which the plaintiff has a general or special property interest with a right to immediate possession and which are wrongfully detained from him in any manner, together with the damages for such wrongful detention.

Conn. Gen. St. § 52-515.

In order to replevin chattel, the plaintiff must establish that: (1) the chattel is "goods or chattels" within the meaning of § 52-515; (2) it has a "property interest" in the chattel; (3) a right to immediate possession of the chattel; and (4) the defendant has wrongfully detained the chattel. *Cornelio v. Stamford Hospital,* 246 Conn. 45, 49, 717 A.2d 140 (1998).

In this instance, the Inventory Collateral falls under the definition of the goods or chattels; TMCC has a clear security interest in the Inventory Collateral via its SCG Security Agreements and UCC filings; The SCG Security Agreements specifically provide that TMCC is entitled to immediate possession of the Inventory Collateral as one of its remedies thereunder (see e.g., SCG Security Agreements, Sections 7.2 (D) & 7.2(F)); and as a result of the breach of the SCG Security Agreements, SCG is wrongfully withholding the Inventory Collateral from TMCC.

As set forth in the verified complaint, the accompanying affidavit and this memorandum of law, TMCC has established its *prima facia* case for replevin of the Inventory Collateral.

### B. A Preliminary Injunction Should Issue to Aid TMCC in its Repossession of the Inventory Collateral.

Pursuant to Conn. Gen. St. §52-473 and Fed. R. Civ. P. 65, a preliminary injunction may be granted if "the circumstances of the case demand it, or the court or judge may cause immediate notice of the application to be given to the adverse party, that he may show cause why the injunction should not be granted."

8

> To receive a preliminary injunction, the plaintiff must show (1) "a likelihood of success on the merits," (2) "that [the plaintiff] is likely to suffer irreparable injury in the absence of an injunction," (3) that "the balance of hardships tips in the plaintiff's favor," and (4) "that the public interest would not be disserved by the issuance of [the] injunction." *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010) (internal quotation marks omitted). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) (per curiam) (alteration in original) (emphasis in original) (internal quotation marks omitted).

*Capstone Logistics Holdings, Inc. v. Navarrete*, 736 Fed. Appx. 25, (Mem)–26 (2d Cir. 2018)

First, TMCC is likely to prevail on the merits of its complaint. SCG has defaulted under the terms of the SCG Financing Agreements. As a result of the default, TMCC is entitled to immediate possession of the Inventory Collateral. See e.g., SCG Security Agreements, Sections 7.2 (D) & 7.2(F)).

Next, TMCC does not have an adequate remedy at law and will suffer an irreparable harm. As set forth above, approximately 46 vehicles were missing from the floorplan audit on March 27, 2026. Between the date of the audit and the date of this Motion,, SCG caused additional vehicles to be removed from the dealership outside of the terms of the SCG Security Agreements. A suit for money damages is inadequate, or seriously deficient, to protect TMCC's rights and interests because SCG may become insolvent before a final judgment is entered and collected. Presumably, if SCG had the ability to pay TMCC now, they would not be in default. *See Conn. Nat'l Bank v. Trans World Airlines, Inc.*, 762 F. Supp. 76, 80 (S.D.N.Y. 1991). Therefore, it is also unlikely that SCG will have the cash to satisfy a money judgment at some point in the future.

Finally, the balance of the equities lie in favor of TMCC. As demonstrated by SCG actions after the March 27, 2026 audit, in removing vehicles from the dealership, clearly reflects SCG's disregard for it obligations and rights under the SCG Security Agreements. SCG's default suggest that TMCC may never be paid, and absent a return of the Inventory Collateral, TMCC cannot

mitigate its losses. For this reason, the impact of the removal of the Inventory Collateral from the possession of SCG does not warrant a denial of the relief sought by TMCC.

TMCC's request that SCG be enjoined from using the Inventory Collateral is a bargained for right that should not be denied. Moreover, from a practical perspective, surrender of the Inventory Collateral now does not pose undue hardship on SCG. SCG has or should have in place capabilities to identify, locate, and surrender the Inventory Collateral.

A SCG claim that it needs the Inventory Collateral to conduct its business is unavailing because to hold otherwise would deprive TMCC of the benefits of its bargain and render its contractual rights a nullity. The SCG Security Agreements clearly reflect the rights under the default by the parties.

### C. A Prejudgment Remedy attachment in accordance with Conn. Gen Stat. § 52-278d as to the real and personal property of the Guarantors is necessary to secure any amounts owed TMCC.

The Defendants, SJB; MAH, Accumulation Trustee; and SJB, Spray Trustee, contractually bound themselves to pay the indebtedness of SCG to TMCC "Irrevocably and Unconditionally". As part of their guaranty, the Guarantors granted a security interest in "[a]ll personal property and fixtures….and any other property, rights and interests of such Guarantor,,,"

A prejudgment remedy "is generally intended to secure the satisfaction of a judgment should plaintiff prevail." *Cendant Corp. v. Shelton*, No. 3:06 CV 854 (JCH), 2007 WL 1245310, at *2 (D. Conn. Apr. 30, 2007) (citation omitted). Rule 64 of the Federal Rules of Civil Procedure permits a plaintiff to utilize available state prejudgment remedies to secure a judgment that might ultimately be rendered in an action. *See* F. R. Civ. Pro. 64; *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 436, n.10 & 437, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974); *Dill v. Ron's Golf Car Rental, Inc.*, No. 3:12CV137 (JBA)(JGM), 2013 WL 275690, at *8 (D. Conn. Jan. 24, 2013). The prejudgment remedy statute in Connecticut applies to federal court actions in this District. *See* Fed. R. Civ. P. 64(a); *Roberts v. TriPlanet Partners, LLC*, 950 F. Supp. 2d 418, 420 (D. Conn. 2013) ("Federal Rule of Civil Procedure 64 provides that prejudgment remedies available under state law are also available to litigants in federal court.") (applying Conn. Gen. Stat. § 52-578d(a)).

> As set forth in the Connecticut prejudgment remedy statute, probable cause is the standard for issuing a prejudgment remedy. Conn. Gen. Stat. § 52-278d(a).

*N. Jonas & Co., Inc. v. Bros. Pool Enterprises, Inc.,* 638 F. Supp. 3d 193, 198 (D. Conn. 2022).

Here there is probable cause to support TMCC's claims against the Guarantors. Probable cause is "a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false." *Id.* at 199.

The elements of a breach of contract by SCG are clearly established. SCG received a loan which obligated it to pay TMCC and comply with the terms of SCG Security Agreements.  During an audit it was discovered that several motor vehicles were unaccounted for by SOT or simply missing. Either of which triggered a default under the terms of the SCG Agreement. Once TMCC established that SCG is in breach of its obligations to TMCC, the default initiated the obligations of the Guarantors. See, Verified Complaint, Count Three.  To date, the Guarantors have not remedied the default by SCG.

Finally, the amounts owed are not left to speculation, the damages are clearly defined. The contractual obligations of the Guarantors to TMCC, as of April 2, 2026 are $6,147,948.70, as set for the in the Affidavit of Deanna Kostelnik of TMCC, exclusive of interest, attorney fees and costs as contemplated in the terms of the Guaranty Agreements.

## III. CONCLUSION

For the foregoing reasons and those set forth in the Verified Complaint and the Affidavit of Deanna Kostelnik attached hereto, TMCC  respectfully requests that its Motion be granted along with such other relief that this Court deems just, proper and equitable.

12

DATED:  April  9, 2026                    NEUBERT PEPE & MONTEITH, PC.

*/S/ Christopher J Picard*
Christopher J Picard (ct22835)
Douglas S. Skalka (ct00616)
James C. Graham (ct06064)
195 Church St, 13th Floor
New Haven, CT 06510
cpicard@npmlaw.com
dskalka@npmlaw.com
jgraham@npmlaw.com
(203)781-2845
*Counsel for Toyota Motor Credit Corporation*

**CERTIFICATION**

I hereby Certify that on April 9, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System. This will further certify that a copy of the foregoing has been mailed, postage prepaid or served by process, of even date herewith to the following:

Stephen Cadillac GMC, Inc.
1069 Farmington Ave
Bristol, CT 06010

Stephen J Barberino, Trustee.
1069 Farmington Ave
Bristol, CT 06010

Stephen J Barberino, Trustee
124 Indies Drive S
Duck Key Florida 33050

Stephen J Barberino
1069 Farmington Ave
Bristol, CT 06010

Stephen J Barberino
124 Indies Drive S
Duck Key Florida 33050


Mary Ann Hall, Trustee
1069 Farmington Ave
Bristol, CT 06010

Mary Ann Hall, Trustee
701 Center St Unit A-2
Wallingford, CT 06492

*S/ Christopher J Picard*
Christopher J Picard (ct22835)

13